538   Postal Tel.-Cable Co. *v.* Associated Press.   No. 1.

First Department, December, 1916.            [Vol. 175.

Postal Telegraph-Cable Company, Respondent, *v.* The Associated Press, Appellant.   (Action No. 1.)

First Department, December 8, 1916.

Telegraphs and telephones — Interstate Commerce Act — discriminatory contracts by telegraph company with news agencies — action on contracts for "leased wire service" — pleading— defenses — contracts — construction — recovery upon quantum meruit — Kansas statute against unjust or unreasonable discrimination by utility corporations.

Where a company engaged in maintaining and operating telegraph lines and circuits, after making contracts with a news agency for " leased wire service" between points in different States, subsequently makes similar contracts under similar circumstances and conditions with rival news agencies at a lower rate, it is guilty of giving a preference or advantage to " a locality," and also of giving a preference to the rival agencies, and also of creating an undue and unreasonable prejudice and disadvantage to the first news agency in violation of the Interstate Commerce Act, although the later contracts were for service between different points than contemplated in the contracts with the first news agency.

Both under the common law and under the Interstate Commerce Act and also under the statute of the State of Kansas, a telegraph company is forbidden to make with rival news agencies discriminatory contracts or contracts which shall create any undue or unreasonable prejudice or disadvantage in any respect whatever as against a news agency with which it has already contracted.

The Kansas statute, however, is limited to unjust or unreasonable discrimination as to rates exacted within the State.

Action by a telegraph company against a news agency to recover on contracts for "leased wire service." Provisions of the answer alleging as a defense that the plaintiff had made subsequent contracts with rival agencies in violation of the Interstate Commerce Act examined, and *held*, sufficient.

An allegation that the plaintiff has offered a rate to news agencies between points wholly within the State of Kansas for service similar to that for which the defendant has contracted to pay without an allegation that such service has actually been rendered at the lesser rates within the State, does not constitute a violation of the Kansas statute, forbidding unjust or unreasonable discrimination as to rates exacted by utility corporations within the State, and, hence, such a defense is subject to demurrer.

When a telegraph company makes contracts with a news agency for a "leased wire service" there is written into the same by the statute the

obligation not to make contracts giving a preference to any locality, and also the obligation not to make a contract in favor of other rival agencies and to the prejudice and disadvantage of the holders of previous contracts.

Where a telegraph company has violated the statute by executing contracts to rival agencies at a lower rate, the holder of a prior contract may cancel the same, but having accepted the service may be held liable at least upon a *quantum meruit* for the reasonable value thereof.

The telegraph company cannot, under such circumstances, in an action on a prior contract recover more than the lower rate given to the defendant's competitors, and facts showing the discrimination and the breach of the contract by the plaintiff are properly pleaded as a partial defense.

A recovery upon a *quantum meruit* may be had under an allegation of service in pursuance of a contract.

APPEAL by the defendant, The Associated Press, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 12th day of July, 1916, sustaining plaintiff's demurrer to four affirmative defenses set up in the answer.

This action is to recover installments due upon eleven contracts made with the defendant. Seven of these contracts are set forth at length in exhibits annexed to the complaint. Four of the contracts are dated in 1912, two in 1914 and one in 1915. Plaintiff demurs to matters set up in the 6th paragraph of the answer as a complete defense and to the same matter set up in the 7th paragraph of the answer as a partial defense and similarly to the 8th and 9th defenses pleaded under the Kansas statute. Thereupon plaintiff brought on the argument of said demurrer as a contested motion. The demurrer was sustained as to all defenses.

The facts pleaded in the 6th defense present in the main the legal questions involved and are set forth in full.

"VI. For a further, separate and complete defense to the first, second, fifth and tenth alleged causes of action set forth in the complaint, and to each of them, defendant avers that the plaintiff, Postal Telegraph-Cable Company, was at all the times mentioned in the complaint engaged in maintaining and operating telegraphic lines and circuits between points in different States of the United States, and is subject to the provisions of the Act of Congress known as the Act to Regulate Commerce, approved February 4, 1887, and the acts amenda-

First Department, December, 1916. [Vol. 175.

tory thereof, and supplemental thereto; that the defendant is a news agency engaged in collecting and distributing to its members who are owners or representatives of newspapers, items of news for publication in the newspapers owned or represented by them; that for a long time prior to the beginning of this action the plaintiff has furnished to the defendant and other news agencies, and to newspapers, firms, corporations and individuals, the exclusive use of certain telegraphic circuits between points in different States of the United States during certain hours of the day, which use has been and now is known as ' Leased Wire Service ;' that during such time a charge or rental has uniformly been made by the plaintiff for such service based upon a rate of a certain sum per year for each mile of telegraphic line or circuit so used, without regard to location of the circuit or the distance between the termini thereof. That during said time the use of such circuits between the hours of 6 A. M. and 6 P. M. was known as day service, and the use thereof between the hours of 6 P. M. and 6 A. M. was known as night service, and the said rate per mile so charged by the plaintiff was higher for day service than for night service.

"That for a long time prior to the commencement of this action the said rate so charged by the plaintiff to the defendant regardless of location or distance for day service was twenty-four dollars ($24) per mile per year for twelve hour service between the hours of 6 A. M. and 6 P. M. and for night service was twelve dollars ($12) per mile per year for twelve hour service between the hours of 6 P. M. and 6 A. M. and upon a proportionate basis for less than twelve hours day or night service. That each of the contracts referred to in the first and second alleged causes of action set forth in the complaint provides for a specified sum per year to be paid by the defendant for the exclusive day and night use of a telegraphic circuit between points in different States of the United States, and the contracts referred to in the fifth and tenth alleged causes of action set forth in the complaint provide for a specified sum per year to be paid by the. defendant for the exclusive night use of a telegraphic circuit between points in different States of the United States. That the payments provided for in such

of said contracts as relate to both day and night service are for a lump sum, without specifically dividing the charge for rental for the day use of said circuits and for the night use thereof. That the charge for the night service, included in the sums stated in such of said contracts as relate to both day and night service, was based upon the said rate of twelve dollars ($12) per mile per year; and the charge for the day service included therein was based upon the said rate of twenty-four dollars ($24) per mile per year; that the charge for the night service, constituting the sums stated in such of said contracts as relate exclusively to night service, was based upon the said rate of twelve dollars ($12) per mile per year.

"That during the same time, down to August 1, 1915, the same rates of twenty-four dollars ($24) per mile per year for day service and twelve dollars ($12) per mile per year for night service was offered by the plaintiff to other news agencies for similar telegraphic day and night service, respectively, regardless of location or distance; that subsequently to the making of each and every of the said contracts referred to in the above-named causes of action, and on or about August 1 1915, plaintiff, while making no reduction in its rate for day service, publicly announced that on and after that date it would furnish such telegraphic night service to news agencies at the rate of six dollars ($6) per mile per year instead of at the said rate of twelve dollars ($12) per mile per year, and on or about September 15, 1915, it publicly announced that it would thereafter furnish such telegraphic night service to news agencies at the rate of three dollars ($3) per mile per year, and since said dates it has offered to furnish such telegraphic night service at the said reduced rates between all points where it operated telegraphic lines or ircuits, including those points named in the said contracts hereinabove referred to; that from August 1, 1915, to and including September 15, 1915, the plaintiff furnished such telegraphic night service to news agency or agencies other than the defendant between points in different States at the said rate of six dollars ($6) per mile per year, and from September 15, 1915, up to the present time has furnished such telegraphic night service to said news agency or agencies

between points in different States at the said rate of three dollars ($3) per mile per year, although the plaintiff down to the present time has charged and is endeavoring to collect from the defendant for similar night service the same rate of twelve dollars ($12) per mile per year which it charged to all news agencies prior to said reduction. That as defendant is informed the telegraphic night service so actually furnished to others did not happen to be between the same points as those referred to in said contracts, but that each of said rates was, at the times alleged, charged and collected by the plaintiff irrespective of the location of the circuit or the distance between the termini thereof, and the total rental for such leased wire service given by the plaintiff either to the defendant or to others was based upon the said rates per mile and was determined solely by the number of miles of circuit used and the time and extent of such use as hereinabove alleged. That the night service furnished to other news agency or agencies as hereinabove alleged was a like and contemporaneous service to that rendered to the defendant and forming the basis of the causes of action hereinabove referred to, and was rendered under substantially similar circumstances and conditions; that there is a sharp rivalry between news agencies in the gathering of news as economically as possible and also in securing members and that the granting by the plaintiff of such reduced rates to other news agency or agencies while endeavoring to exact such higher rates from the defendant constitutes an undue and unreasonable preference and advantage to such other news agency or agencies and subjects this defendant to undue and unreasonable prejudice and disadvantage.

" That by reason of the matters herein alleged, the payments provided for in each of said contracts are discriminatory and in violation of the Act to Regulate Commerce and that the said contracts, and each of them, have thereby become and now are wholly illegal and void, and cannot be enforced against the defendant."

This same matter is alleged in the 7th paragraph as a partial defense.

One of the causes of action in the complaint is under con-

tracts which provide for service wholly within the State of Kansas. As to that cause of action a Kansas statute* is pleaded which is substantially similar with the Interstate Commerce Act. As to that cause of action the Kansas statute is pleaded also both as a complete defense and as a partial defense, which said defenses have been held to be insufficient.

*William C. Cannon*, for the appellant.

*D-Cady Herrick*, for the respondent.

SMITH, J.:

The first contention of the plaintiff is that the Interstate Commerce Act does not require equality of service in the leasing of the wire circuits, but simply in the sending of messages by the plaintiff itself over its wires. By section 1 of the Interstate Commerce Act it is provided that the provisions of the act shall apply to telegraph, telephone and cable companies engaged in sending messages from one State, territory or district of the United States to another State, territory or district of the United States, "who shall be considered and held to be common carriers within the meaning and purpose of this act." (24 U. S. Stat. at Large, 379, § 1, as amd. by 36 id. 544, § 7.) Section 3 of the act provides that "it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, *or locality*, or *any particular description of traffic*, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." (24 id. 380, § 3.)

When these contracts were originally made no other contracts were made by or offered to any other news agency which could be held discriminatory under these sections of the Interstate Commerce Act. When, however, in 1915 similar contracts were made under similar circumstances and conditions with other news agencies at the sum of three dollars per mile per

---

* See Kansas Laws of 1911, chap. 238.—[REP.

year for night service, although the contracts were for such service between different points than the service contemplated in the contracts in suit, it constituted at least a preference or advantage to a "locality," and, considering the peculiar service rendered by these news agencies, constituted, I think, a preference to those agencies with whom the plaintiff contracted for the lesser rate and created an undue and unreasonable prejudice and disadvantage to the defendant. It may be that the plaintiff company was not required to give to any customer the wire service provided for in these contracts. But when this service was generally given and generally offered, it became the duty of the company under the Interstate Commerce Act and under the Kansas act to give such service upon equal terms; and when during the term of the contracts with the defendant such service was given to a rival news agency in competition with the plaintiff, at a lower rate, this came within the prohibition of the acts.

Howsoever the acts be construed, discriminatory contracts to the prejudice of one party are forbidden by the common law. In *Cumberland Telephone & Telegraph Co.* v. *Kelly* (160 Fed. Rep. 316) the rule is stated: "Both telephone and telegraph companies are engaged in a quasi-public service, and * * * without regard to statute, * * * must serve the public without partiality or discrimination." The same rule was held in *Postal Cable Telegraph Co.* v. *Cumberland T. & T. Co.* in the Circuit Court of Tennessee (reported in 177 Fed. Rep. 726), which holds that a Tennessee statute substantially prescribing the duties declared by the Interstate Commerce Act was merely declaratory of the common-law obligation of telephone and telegraph companies, giving a new remedy and imposing severe penalties for non-observance. In *Western Union Telegraph Co.* v. *Call Publishing Co.* (181 U. S. 99) the opinion of Mr. Justice BREWER in part reads: "Common carriers, whether engaged in interstate commerce or in that wholly within the State, are performing a public service. They are endowed by the State with some of its sovereign powers, such as the right of eminent domain, and so endowed by reason of the public service they render. As a consequence of this, all individuals have equal rights both in respect to service and charges. Of course, such

equality of right does not prevent differences in the modes and kinds of service and different charges based thereon.  There is no cast iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines.  But that principle of equality does forbid any difference in charge which is not based upon difference in service, and even when based upon difference of service, must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination.  To affirm that a condition of things exists under which common carriers anywhere in the country, engaged in any form of transportation, are relieved from the burdens of these obligations, is a proposition which, to say the least, is startling."

Both, therefore, under the common law and under the Interstate Commerce Act, as well as under the Kansas statute, the plaintiff is forbidden to make discriminatory contracts or contracts which shall create any undue or unreasonable prejudice or disadvantage in any respect whatever as against the defendant.

The second contention of the plaintiff is that the defenses do not allege facts which show that discriminatory rates are given to any of the defendant's rivals or competitors to its disadvantage or prejudice.  It is true that it is alleged that service under any contract made at the lesser rate is not between the same points as the service provided for in the defendant's contracts.  Nevertheless, as before stated, an undue preference or advantage is thus given to those "localities" to which the cheaper service is given, and this is forbidden by section 3 of the Interstate Commerce Act.  But aside from that we are of the opinion that the complaint alleges sufficient to show a preference given to those companies receiving the lesser rate to the undue and unreasonable prejudice and disadvantage of the defendant itself.  The answer states a sharp rivalry and competition between the defendant and other news agencies to whom those contracts are given.  We may fairly assume, with the interlacing throughout the whole country of different telegraph and telephone lines, that the service offered to the

defendant's rivals and competitors at the lesser rate under simi-
lar circumstances and conditions must of necessity, although
between different points, give to those rivals and competitors
an undue advantage. And this fact is explicitly alleged in the
answer. Whether or not the proof adduced upon the trial may
show any justification for this discriminatory rate given to the
defendant's competitors, the pleading, we think, is sufficient as
against the demurrer to present the issue for trial.

The third question presented is, upon the assumption that
the rates given to the defendant's rivals by the later contracts
are discriminatory, what effect this act of the plaintiff has
upon the defendant's contracts theretofore made to pay the
rate therein prescribed. In 9 Cyc. 582 the rule of law is thus
stated: "The law of the place where the contract is entered
into at the time of making the same is as much a part of the
contract as though it were expressed therein." To this proposi-
tion many cases are cited from different States, and the rule of
law thus stated will hardly be questioned. When the defend-
ant's contracts were made, therefore, there was written into
the same by the statute itself the obligation not to make con-
tracts giving a preference to any locality, and also the obliga-
tion not to make a contract in favor of the defendant's rivals
and to the prejudice and disadvantage of the defendant. When,
therefore, in 1915, other contracts were made with the defend-
ant's rivals at a three-dollar rate under similar circumstances
and conditions as alleged in the answer, the plaintiff violated
its contract with the defendant, which gave to the defendant
at least the right to cancel the contract. The defendant was
not required to surrender the service, because it had the abso-
lute right thereto under the common law and under the statute
on account of the public obligation of the plaintiff, and having
accepted the service, was clearly liable at least upon a *quan-
tum meruit* for the reasonable value thereof. Whether the
defendant must elect to rescind the contract or may elect to
stand upon the same at the lesser rate it is not necessary
now to decide. It seems clear that the plaintiff cannot recover
more than the rate given to the defendant's competitors, and
the facts showing the discrimination and the breach of the con-
tract by the plaintiff in the giving of these discriminatory rates

were, therefore, properly pleaded as a partial defense to plaintiff's cause of action to recover the full contract price.  A recovery upon a *quantum meruit* may be had under an allegation of service in pursuance of a contract made.  (*Lockhart* v. *Hamlin,* 190 N. Y. 132; *Clapp* v. *Schaus,* 156 App. Div. 683.)

As to the eighth and ninth affirmative defenses pleaded under the laws of the State of Kansas, in which no question of interstate commerce is involved, a somewhat different problem is presented.  The Kansas statute as pleaded simply forbids unjust or unreasonable discrimination as to rates exacted by utility corporations within the State.  It does not appear that the statute contains any provision such as is found in the Interstate Commerce Act specially prohibiting a discrimination in favor of localities.

There is another distinction which, to my mind, is vital to this determination.  While it is alleged that the plaintiff has offered a six-dollar and a three-dollar rate to news agencies between points wholly within the State of Kansas for service similar to that for which the defendant has contracted to pay a twelve-dollar rate, there is no allegation that such service has actually been rendered at the lesser rates within the State of Kansas.  So that it does not appear that any discrimination in fact exists for service wholly within that State.  An offer to discriminate cannot in law be deemed actual discrimination, and until a lesser rate is given to competing corporations so as to give to such corporations an unfair advantage, the defendant remains liable upon its contract to pay at the twelve-dollar rate.

The order appealed from is, therefore, modified by overruling the demurrer to the affirmative defense alleged in the 7th paragraph of the answer, and as so modified affirmed, without costs, with leave to the plaintiff to withdraw the demurrer as to said defense, and with leave to the defendant to serve an amended answer within twenty days from service of the order to be entered herein.

CLARKE, P. J., SCOTT, PAGE and DAVIS, JJ., concurred.

Order modified as directed in opinion and as modified affirmed, without costs, with leave to defendant to amend as stated in opinion.  Order to be settled on notice.