POSTAL TELEGRAPH-CABLE COMPANY, Appellant, *v.* THE ASSOCIATED PRESS, Respondent.   (Action No. 1.)

First Department, July 11, 1918.

Telegraphs and telephones — interstate commerce — action on contracts for leased wire service — defense — reduction of established rates — discriminatory contracts by telegraph company with news agencies — evidence.

In an action by a telegraph company, owning and maintaining lines of poles and wires throughout the United States, against the defendant, a news agency, to recover under contracts for " leased wire service," the defendant pleaded that owing to reductions by plaintiff in its established rates for like service to other news agencies between whom and the defendant there was and is sharp competition, after the contracts in question were made, and before the service for which recovery is sought was rendered, the contracts became. discriminatory and void, and that plaintiff's charges to the defendant under the contracts were in violation of the Interstate Commerce Act.

*Held*, that evidence as to the general reductions of plaintiff's established rates and as to numerous contracts for service at the reduced rates established a *prima facie* case of discrimination which has been neither overcome nor met by any evidence showing that the conditions and circumstances under which said service at reduced rates was furnished were materially different.

Unless the circumstances and conditions affecting the service are substantially similar a lower rate does not constitute discrimination unless the difference in the rates is disproportionate to the difference in the conditions relating to the service.

SHEARN, J., dissented, with opinion.

APPEAL by the plaintiff, Postal Telegraph-Cable Company, from a judgment of the Supreme Court in its favor, entered in the office of the clerk of the county of New York on the 15th day of March, 1918, upon the decision of the court after a trial before the court, a jury having been waived.

*D-Cady Herrick* of counsel [*William W. Cook,* attorney], for the appellant.

*William C. Cannon* of counsel [*Frederic B. Jennings* and *Malcolm S. McN. Watts* with him on the brief; *Stetson, Jennings & Russell,* attorneys], for the respondent.

LAUGHLIN, J.:

The parties are domestic corporations, and, as their respective names imply, the plaintiff was engaged in business as a telegraph company having and maintaining lines of poles and wires throughout the United States for that purpose, and the defendant was a news agency engaged in obtaining and transmitting news items by wires for publication in newspapers owned or represented by its members.

The plaintiff alleged in separate counts seven causes of action based on contracts in writing for rent for the exclusive use of telegraph circuits between points in different States, and three for like rentals under contracts resting in parol, and one for battery service pursuant to an oral agreement. Nine other similar actions brought by plaintiff against defendant were tried with the issues herein and by stipulation are to abide the event hereof. Counts 4, 6, 7, 8, 9 and 11 of the complaint were put in issue by the answer. Four of them, namely, the fourth, sixth, seventh and eighth, were based on contracts for services to be furnished between six A. M. and six P. M., known as day service, and the plaintiff's right to recover on those causes of action is not questioned. The controversy relates to charges for services between six P. M. and six A. M., known as night service. Defendant alleged in its answer that the plaintiff had for many years prior to the making of the contracts in question uniformly based its rental charges for such service on a specified rate per mile of telegraph line or circuit per annum without regard to geographical location or distance covered by the service,

but had charged a higher rate for day service than for night service, namely, twenty-four dollars per mile per annum for twelve hours' day service, and twelve dollars per mile per annum for twelve hours' night service, and upon a proportionate basis for less time. The service contracted for was known as " leased wire service," under which the plaintiff furnished the use of the wires properly equipped with batteries between the termini and the defendant connected its offices at the respective termini with the wire and furnished its own operators until the service was complete. The contract involved in counts 1 and 2 of the complaint were for both day and night service and those involved in counts 5 and 10 were for night service only. The defendant pleaded that owing to reductions by plaintiff in its established rates for like night service to other news agencies, between whom and the defendant there was and is sharp competition, after these contracts were made and before the service for which recovery was sought herein was rendered, the contracts became discriminatory and void, and that plaintiff's charges to the defendant according to the prices specified in the contracts were in violation of the Act to Regulate Commerce* approved February 4, 1887, known as the Interstate Commerce Act, and the acts amendatory thereof and supplementary thereto, and that, therefore, no recovery could be had thereunder. It also pleaded the same facts as a partial defense to said causes of action. The answer alleged as a defense to the third cause of action, which was for both day and night service wholly within the State of Kansas, the same facts with respect to the former uniformity of rates and that the rate charged in said contract was fixed on the same basis and that plaintiff offered like service at the same charges to other news agencies regardless of location or distance, and that after making the contract with defendant plaintiff reduced its fixed rates for similar night service and offered to afford such service to other news agencies at the reduced rates but made no change in its charge for day service and has offered such service at the reduced rates to news agencies ever since, but has continued to charge defendant at the contract rate

---

* See 24 U. S. Stat. at Large, 379, chap. 104, as amd.— [REP.

in violation of chapter 238 of the Laws of Kansas for the year 1911, and that by virtue of the provisions of said statute* the contract with the defendant became discriminatory, illegal, unlawful and void, and it pleaded the same facts as a partial defense.  Demurrers were interposed to these defenses and the demurrers to the facts pleaded as complete defenses were sustained by this court, but it was held that the partial defenses were good.  (*Postal Telegraph-Cable Co.* v. *Associated Press, No. 1,* 175 App. Div. 538.)

The issues then came on for trial.  Four of the causes of action, namely, the first, second, fifth and tenth, were litigated.  The first three of these involved rentals for the months of August, September, and October, 1915, and the tenth involved rent for August and September and the first four days of October, 1615.   The first cause of action was on a contract for service from Omaha to San Francisco, consisting of two circuits, covering the period from August 1, 1912, to October 31, 1917, involving both day and night service; the second was for day and night service from Omaha to Chicago under a contract made December 29, 1912, and continuing for five years; the fifth was on a contract for night service between Lincoln and Omaha, Neb., and Sioux City, Ia., for one year from January 1, 1915, and the tenth was for night service only from Omaha to Sioux City from seven to nine P. M. each day from March 15, 1915, at a yearly rental without a fixed term.

The uncontroverted evidence shows that from the year 1882 to August 1, 1915, the uniform rate charged by the plaintiff and by other telegraph companies throughout the United States for leased line service was twenty-four dollars per mile per annum for twelve hours' day service and twelve dollars per mile per annum for twelve hours' night service, and that the charge was the same between all points; that on the 1st day of August, 1915, the plaintiff caused it to be announced in the public press and caused notice to be sent to its division superintendents that it had granted a fifty per cent reduction

---

* See Kansas Laws of 1911, chap. 238, § 10; Gen. Stat. Kansas (1915), § 8337.— [REP.

in its rates for this class of *night* service, making an established rate of six dollars per mile per annum for twelve hours' night service; that on September fifteenth, following, it made like announcement and gave like notice of a further reduction of fifty per cent in its established rate for such *night* service and thereby established its rate at three dollars per mile per annum for twelve hours' night service.

The trial court reduced all of the plaintiff's claims for night service to the basis of six dollars per mile per annum for twelve hours' service from August 1 to September 15, 1915, and to three dollars per mile per annum thereafter in accordance with the plaintiff's said announced reduction of rates.

The evidence presents no basis for a recovery other than as allowed by the trial court or as provided in the contracts between the plaintiff and defendant. On the former appeal, involving the sufficiency of the defenses, this court held that these were contracts by a common carrier within the purview of the Interstate Commerce Act; that the plaintiff could not discriminate between its patrons receiving substantially similar service; that consequently the defendant was entitled to any lower rate made by the plaintiff for substantially like service after these contracts were made, and that it was the duty of the plaintiff to afford the service to the defendant for the rate it charged for like contemporaneous service under substantially similar circumstances and conditions without discrimination with respect to the points of such service. (*Postal Telegraph-Cable Co.* v. *Associated Press, No. 1, supra.*) The learned trial court found that the service afforded and furnished to others at said reduced rates by the plaintiff during the period for which the recovery of rent is herein sought, was substantially similar to that furnished to defendant and under substantially similar conditions and circumstances and that it placed the defendant at a disadvantage with its competitors, and that the defendant became entitled to such reduced rates.

The learned counsel for the appellant, while reserving the point with respect to whether these contracts were within the provisions of the Interstate Commerce Act which was decided adversely to the plaintiff on the former appeal, contends that the judgment is erroneous in that the service provided for in some of the contracts and particularly those

specified in the first and second counts, differs substantially from the service offered and afforded to others at the lower rates. It appears that in order to render the service under the first contract with defendant it became necessary for plaintiff to string an additional wire — it then had the poles and other wires in use on that line — from Denver to San Francisco or for a large part of that distance, and that it only consented to do so on condition that the contract should be for a term of five years, and that it was then contemplated that the second contract, negotiations for which were pending, would be made, thus providing for a service from Chicago to San Francisco. It further appears that it is more difficult and expensive to maintain a line west of the Mississippi than east thereof and that there is but little local business on the line between Denver and San Francisco, and that there are few intersecting lines available for use around a section of line that may be out of order west of the Mississippi and particularly westerly of Denver, whereas east of the Mississippi there are many northerly and southerly intersecting lines available in such circumstances. It also appears that local rates for commercial messages are much higher west of the Mississippi river. Although the plaintiff's former established rates were general throughout the United States and there was no limitation with respect to territory in the announcement of said reductions of rates, it appears that the plaintiff after so reducing its rates made no contract for similar service westerly of Denver and that it declined applications from news agencies for such service at the reduced rates although it had wires available therefor. The plaintiff, however, during the period in question leased a wire at the reduced rate for like night service from Chicago to Des Moines and Kansas City for a month and from Chicago to Denver for about a month; but that service did not require that an additional wire be strung. It appears that the plaintiff after so reducing the rates made one contract for like service at the old rate wholly within the State of Washington. The contracts involved in the first, second and fifth counts provided for a *pro rata* abatement of rent in case of interference with the service for a day or more, while the contracts made by the plaintiff at the reduced rates provided that there.

should be no reduction or abatement " on any account whatever." Counsel for the appellant insists that this shows that the service was materially different, but the trial court has not given the defendant the benefit of the provisions with respect to a rebate, and recovery on that point has been had the same as if under the contracts which the plaintiff made with others at the reduced rate. The contracts involved in the first and second counts did not require defendant to use the lines for the full twelve hours of the night, whereas the contracts made by the plaintiff with others for the reduced rates did. It is also contended that this shows a difference in the service. But it appears that at no time in fixing the rate did the question of the *period* of the service enter into the consideration, and on the contrary, the evidence shows that it did not, either with respect to the number of hours of service per day or the period covered by the contract. The uncontroverted evidence shows that the plaintiff had only these general established rates and that after they were reduced there is no evidence other than the making of the second contract in the State of Washington and another for service to Toronto, that the plaintiff had or charged any rate other than the established reduced rate for the respective periods covered thereby. It is now well-settled law that unless the circumstances and conditions affecting the service are substantially similar a lower rate does not constitute discrimination unless the difference in the rates is disproportionate to the difference in the conditions relating to the service. (*Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92; *Postal Cable Telegraph Co.* v. *Cumberland T. & T. Co.*, 177 Fed. Rep. 726; *Shoemaker* v. *C. & P. Telephone Co.*, 20 I. C. C. Rep. 614; *Lehigh Portland Cement Co.* v. *B. & O. S. W. R. R. Co.*, 35 id. 20; *Tulsa Traffic Assn.* v. *A., T. & S. F. Ry. Co.*, 40 id. 11; *United States* v. *Chicago & N. W. Ry. Co.*, 127 Fed. Rep. 785; *Interstate Commerce Commission* v. *Chicago Great Western Ry. Co.*, 141 id. 1003.)

The defendant showed numerous other contracts for service at the reduced rates made throughout the territory east of the Mississippi river as well as those to which reference has been made. That evidence and the general reductions of plaintiff's established rates as already stated, I think, established

a *prima facie* case of discrimination which has been neither overcome nor met by any evidence showing that the conditions and circumstances under which such service at reduced rates was furnished, were materially different.    (See *Richmond Elevator Co.* v. *Pere Marquette R. Co.*, 10 I. C. C. Rep. 629, 636; *Matter of Rate Advances*, 24 id. 290; *Rice, Robinson & Withrope* v. *W. N. Y. & Pa.*, 3 id. 162.)   The only evidence tending to justify the advances in the rate of charges is that to which reference has been made, and it nowhere appears that those matters affected the fixing of the rates at any time. On the contrary, for like *day* service the charge has been uniformly the same between all points throughout the United States and was not reduced in any part of that territory at the time of the reductions to which reference has been made. Surely if there be no difference between the day service depending on whether furnished east or west of the Mississippi there can be no substantial difference in the *night* service so far as the rates to be charged are concerned.   It is fairly to be inferred from the evidence that when the plaintiff authorized the general announcement of the reductions of its rates, they were intended to apply throughout the land.   The mere fact that the plaintiff did not enter into a contract to furnish similar service for the territory west of Denver is not a controlling consideration, for by the publication of the reduction of its rates such rates became its established rates.   (*New York Cent. & H. R. R. R. Co.* v. *United States*, 166 Fed. Rep. 267; *United States* v. *Howell*, 56 id. 21.)

It follows, therefore, that the judgment should be affirmed, with costs.


CLARKE, P. J., DOWLING and MERRELL, JJ., concurred; SHEARN, J., dissented.


SHEARN, J. (dissenting):

The first cause of action is for rent of a telegraph wire between Omaha and San Francisco for the months of August, September and October, 1915, amounting to $16,861.26, pursuant to a written contract made August 1, 1912, under which contract the wire had been continuously operated until defendant's refusal to pay the rental in suit.   The defendant seeks

to avoid its contract obligation by alleging that from August 1, 1915, to September 15, 1915, the plaintiff furnished similar telegraphic service to news agencies other than the defendant between points in different States at the rate of six dollars per mile per year as against this contract charge of twelve dollars per mile per year; that such service was rendered under substantially similar circumstances and conditions, and that the granting of such reduced rates to other news agencies, while endeavoring to exact such higher rates from the defendant, constituted an undue and unreasonable preference and an unlawful discrimination in violation of the Act to Regulate Commerce. No proof was introduced which established that the contract rate was unreasonable *per se*, or that the six-dollar rate was unreasonably low. The attack upon the contract is based solely, so far as the proof is concerned, upon the charge of discrimination and undue preference. To establish the discrimination, the defendant introduced evidence showing that for a long time prior to the commencement of this action the plaintiff had furnished to the defendant and to other news agencies and to newspapers the exclusive use of certain telegraphic circuits between points in different parts of the United States for a charge or rental uniformly based upon a rate of a certain sum per year for each mile of telegraphic line or circuit so used, without regard to location of the circuit or the distance between the termini thereof; that the rate so charged regardless of location or distance for day service was twenty-four dollars per mile per year, and for night service was twelve dollars per mile per year, and upon a proportionate basis for less than twelve hours' day or night service. It was further shown that about August 1, 1915, the plaintiff through its vice-president announced a reduction of its rates by notifying the plaintiff's general superintendents by wire, and telling them to notify the newspapers, and the newspapers were notified by plaintiff's operating department. The notification was not circularized. There were sections of the country to which the notices were not issued, and the reductions did not apply to the Pacific coast. On September 15, 1915, there was an announcement of a further reduction in rates to the press, including press associations and newspapers, such notification being made in

the same manner as the first. The reductions affected only night service. The first reduction was from twelve dollars per mile to six dollars per mile, and the second to three dollars per mile to press associations and two dollars and fifty cents to newspapers. The defendant introduced no evidence to show that the conditions under which the wire service was furnished in the parts of the country where the lower rate prevailed were similar to the conditions under which the service was rendered between Omaha and San Francisco, where the former rate was maintained. Neither did the defendant show that the plaintiff had leased any wires whatsoever west of Denver at the reduced rate. The only basis for holding that, even *prima facie*, there was a similarity of conditions, and, therefore, an undue preference to those accorded a lower rate, was the fact that for thirty years or more the plaintiff's leased wire rentals had been upon the basis of a charge per mile per hour irrespective of locality or of differing conditions in different localities. Doubtless this was sufficient, under the peculiar circumstances of the case, to cast upon the plaintiff the burden of coming forward with evidence to show the dissimilarity of conditions under which the service was rendered where the higher night rate prevailed, as compared with the parts of the country where the lower night rate prevailed. To meet this burden plaintiff showed that the portion of the country between Denver and San Francisco presents great physical difficulties in constructing and maintaining a telegraph line. It involves crossing the Rocky Mountains, the Great American Desert, and the Sierra Nevada Mountains, covered with forests, and in winter with snow, at times twenty-five to thirty feet deep, so that the lines are inaccessible, rendering it necessary to station men permanently in the mountains with sufficient supplies of food to carry them through the winter months. In addition, there are floods beyond the Sierra Nevada Mountains making it additionally difficult to maintain a reliable telegraph service, and making it more costly than any other part of the country. In stringing wires from Omaha to San Francisco it is necessary to traverse 1,500 miles of difficult country over which there is practically no local business excepting a small amount at Salt Lake City and Reno. Furthermore, west of the Mississippi there are

First Department, July, 1918.                [Vol. 184.

few telegraph lines running north and south, and the lack of such lines imposes a burden on the service, involving interruptions which are serious because the interruption of a circuit involves a complete interruption of the service, as messages cannot be routed around the point of interruption. The wires from Omaha to San Francisco, which constitute part of the line from Chicago to San Francisco, are the most valuable wires the plaintiff has on account of the rate for commercial telegrams being one dollar, this charge being warranted because of the expense and difficulty in constructing and maintaining the line. Plaintiff further showed that, although it had had numerous applications from defendant's competitors for night service to the Pacific coast at the reduced rental prevailing in other parts of the country, it had consistently refused to make any such contracts although its facilities were ample for handling the service. All of this evidence to show dissimilarity of conditions was uncontradicted. To my mind this evidence clearly establishes a substantial dissimilarity in conditions of service to the Pacific coast as compared with the portions of the country in the middle west and east of the Mississippi, where the lower night service prevailed. There is nothing opposed to this evidence except the inferences to be drawn from the custom of the plaintiff during a period of thirty years or more to make a uniform charge based upon wire mileage and hours of service. This inference is not sufficient to overthrow the positive proof of dissimilarity of conditions. The earlier uniform rate may have been dictated by sound business policy, for, treating the business of the company as a whole, it may well have been that the greater profits in the less difficult territory, taking into consideration the relative volume of business, warranted the maintenance of a less profitable rate to the Pacific coast. Again, it may have been competition and a war of rates with a rival company that forced the 1915 reductions for service other than to the Pacific coast. The inferences to be drawn are too many and too uncertain to outweigh the positive proof of substantial dissimilarity in the conditions of the service.

In this situation the law is well settled. "The principal objects of the Interstate Commerce Act were to secure just

and reasonable charges for transportation; to prohibit unjust discriminations in the rendition of like services under similar circumstances and conditions; to prevent undue or unreasonable preferences to persons, corporations or localities; to inhibit greater compensation for a shorter than for a longer distance over the same line; and to abolish combinations for the pooling of freights. * * * It is not all discriminations or preferences that fall within the inhibition of the statute; only such as are unjust or unreasonable. * * * In short, the substance of all these decisions is that railway companies are only bound to give the same terms to all persons alike under the same conditions and circumstances, and that any fact which produces an inequality of condition and a change of circumstances justifies an inequality of charge." Such is the language of Justice BROWN in the leading case of *Interstate Commerce Commission* v. *Baltimore & Ohio Railroad* (145 U. S. 263, 276, 283). These principles have been restated many times in various cases arising under the Interstate Commerce Act and have been steadily adhered to. Many of the cases are referred to in *Interstate Commerce Commission* v. *Chicago Great Western Ry. Co.* (141 Fed. Rep. 1003). (See, also, *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92.) There can be no serious question but that facts which show a substantial inequality of conditions of service justify inequalities of charges. Such being the law and the condition of the proof with respect to the rentals between Omaha and San Francisco, no unlawful discrimination was established, and, there being no proof that the rate charged is unreasonably high, it seems to me that the defendant is bound to pay the rate contracted for.

In so holding there is no conflict with the decision of this court (175 App. Div. 538) overruling plaintiff's demurrer to certain of the defenses set up in the answer. The demurrer admitted the allegation of fact that the service rendered at the lower rate was under substantially similar conditions to those prevailing where the higher rate was charged, and in pointing this out Mr. Justice SMITH in his opinion said: " Whether or not the proof adduced upon the trial may show any justification for this discriminatory rate given to the defendant's competitors, the pleading, we think, is sufficient

as against the demurrer to present the issue for trial " (p. 546).

As to the remaining causes of action, none of which involves service to the Pacific coast, the plaintiff produced no evidence showing substantial dissimilarity of conditions of service and, therefore, it seems to me that the previous decision of this court, above referred to, requires that the judgment rendered upon those causes of action should be affirmed.

The learned trial justice erred, in my opinion, in refusing to find material facts as requested by the plaintiff, evidence as to which was uncontradicted, namely, the fourth, eighth, ninth, eleventh, twelfth, thirteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-seventh, thirtieth, forty-fifth, forty-ninth, fifty-first, fifty-second and fifty-third requests to find. The findings should be modified accordingly, and the judgment modified by increasing the amount thereof so as to include the rental sued for under the first cause of action amounting to $16,861.26, with interest from October 5, 1915, and as modified affirmed, with costs to the appellant.

Judgment affirmed, with costs.